UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAITLIN O'CONNOR, CORA SKINNER, DENISE TRLICA A/K/A DENISE MILANI, ERICA GRISBY, JAIME EDMONDSON LONGORIA, LUCY PINDER, AND SANDRA VALENCIA<br><br>Plaintiffs,<br><br>v.<br><br>206- LLC, d/b/a SUGARS<br><br>Defendant. | Case No. 2:23-cv-00954-RSM<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND SETTING HEARING |

## I.     INTRODUCTION

This matter comes before the Court on Plaintiffs Caitlin O'Connor, Cora Skinner, Denise Trlica a/k/a Denise Milani, Erica Grisby, Jaime Edmondson Longoria, Lucy Pinder, and Sandra Valencia (collectively "Plaintiffs")'s Motion for Reconsideration of the Court's Order denying Plaintiffs' Motion for Default Judgment against Defendant 206- LLC ("Sugars"). Dkt. #18. The Court will grant the motion in part and set a hearing pursuant to Rule 55(b)(2).

## II.     BACKGROUND

According to the Complaint, each Plaintiff is a successful model, actress and/or businesswoman who earns her livelihood promoting her image, likeness and/or identity to clients, commercial brands, and media and entertainment outlets. Dkt. #1, ¶¶ 20-21, 28, 31, 34,

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND SETTING HEARING - 1

37, 40, 43, 46. Defendant was the owner of the strip club Sugars during the relevant time and engaged in the business of entertaining its patrons with alcohol, and nude or semi-nude entertainment in Seattle, Washington. *Id.* at ¶ 49. Defendant owned, operated and controlled Sugars' social media accounts, including Sugars' Facebook and Twitter accounts, and used such social media to post advertisements. *Id*. at ¶¶ 50-51. Many of these advertisements contained images of the Plaintiffs. *Id.* at ¶¶ 22-27, 29, 32, 35, 38, 41, 44, 47, 53. Plaintiffs each allege that such appearance was false, and occurred without their knowledge, consent, authorization, or payment. *Id*. at ¶¶ 25, 30, 33, 36, 39, 42, 45, 48, 60-74.

On or about July 12, 2023, Defendant was served with the Summons and Complaint via process server. Dkt. #8. On July 26, 2023, attorney Todd Williams of Corr Cronin LLP reached out to Plaintiffs' counsel, Joseph Casas, to inform him that his client was aware that it had been served with the Complaint and that they are "in the process of determining whether any [insurance] coverage exists." Dkt. #11-1. On August 28, 2023, Mr. Casas forwarded the Court's order to Mr. Williams which instructed him to either file a judgment or show cause why a default would not be appropriate. *Id*. On September 15, 2023, Plaintiffs served Mr. Williams with a settlement demand. *Id*. Defendant did not answer the Complaint or respond to Plaintiffs' demand. *Id*. On October 6, 2023, Plaintiffs filed their Motion for Entry of Default, and the Clerk entered Default on October 10, 2023. Dkt. #13 and #14. On October 11, Plaintiffs moved for Default Judgment seeking $230,000 in "actual damages." Dkt. #15.

The Court denied that Motion on November 27, 2023. Dkt. #17. The Court, citing *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), found that most of the *Eitel* factors favored entry of default judgment. The Court declined to find merit for Plaintiffs' CPA and negligence claims. The key hangup for the Court was the fourth factor—demonstrating the

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND SETTING HEARING - 2

amount of damages. The Court nevertheless indicated that it would grant Plaintiffs' request to permanently enjoin Defendant from using any images of Plaintiffs in their advertising in a future order. On December 11 Plaintiffs filed the instant Motion.

### III.   DISCUSSION

#### A.   Legal Standard for a Motion for Reconsideration

"Motions for reconsideration are disfavored." LCR 7(h)(1). "The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id*. "The motion shall point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling." LCR 7(h)(2). While a motion for reconsideration is normally not granted without an opportunity for the opposing party to respond, such opportunity is not warranted under the circumstances, including Defendant's default, failure to respond to the motion for default judgment, and opportunity to attend the forthcoming hearing.

#### B.   Fourth *Eitel* Factor: Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). For the remaining claims, the court has discretion to award statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If, however, the court finds that the trademark violation was willful, it may award up to $2,000,000 for each infringement. *Id.* § 1117(c)(2).

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND SETTING HEARING - 3

When determining the appropriate amount of statutory damages to award on default judgment, courts consider whether the amount bears a "plausible relationship to [the p]laintiff's actual damages." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)). That is, although a plaintiff in a trademark infringement suit is entitled to damages that will compensate and serve as a deterrent, "it is not entitled to a windfall." *Id.*

Plaintiffs argue in the instant Motion that the Court erred in focusing on the lack of evidence of Defendant's profits rather than Plaintiffs' request for actual damages. Dkt. #18 at 4. The Court agrees that 15 U.S.C. § 1117 allows for recovery of Defendant's profits or Plaintiffs' actual damages, subject to the principles of equity. Plaintiffs' failure to demonstrate Defendant's profits is not a bar to recovery. However, such evidence is certainly helpful for the Court to evaluate Plaintiffs' damages request under the principles of equity. Plaintiffs have not provided any helpful information about Defendant's financial situation that would assist the Court's understanding the equity of awarding $230,000.

Plaintiffs' sum of $230,000 is apparently based on their expert witness's evaluation of the retroactive compensation each Plaintiff would have received to model for the Defendant. *See* Dkt. #15-2 at 5-6 ("The rates that models are paid are based upon numerous factors, including… the nature, duration and location of the actual shoot and production…. I employed the same approach, methodology, and process that I would typically employ when determining what to charge a company or other entity that is interested in hiring models I represent."). The Court remains unconvinced that it would be proper to award the full compensation each Plaintiff would have received to model for the Defendant.

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND SETTING HEARING - 4

Plaintiffs argue that "the most obvious measure for assessing actual damages is the fair market value of the use of the plaintiff's identity." *Id*. (citing Cody Reaves, *Show Me the Money: Determining a Celebrity's Fair Market Value in a Right of Publicity Action*, 50 U. Mich. J. L. Reform 831, 834 (2017).  However, the value of using Plaintiffs' identity could be determined as the cost of hiring Plaintiffs to model for Defendant's business anew, or the cost of using existing images.  Notably, the Plaintiffs' expert's calculation of each Plaintiff's rate does not take into consideration "the damage or possible end of their career, damage to reputation, or loss of other clients and advertisers by the Models being associated with this type of business." Dkt. #15-2 at 5.  Instead, Plaintiffs' expert "established a fair market fee for the use of each Plaintiff Model's image taking into account the Model's payment history, work quality, experience, exposure and duration of career, and then multiplied each image used by the number of separate types of usage." *Id*. at 6.  Plaintiffs' expert apparently does the math but does not show his work, simply stating the totals for each Plaintiff—*e.g.*, $20,000, or $30,000.  The expert does not quote each Plaintiff's actual modeling rates for a new photoshoot, or the rate for licensing photos from a previous photoshoot—information that presumably exists within the Plaintiffs' knowledge.  Attached to the Motion for Default Judgment are individual declarations of the Plaintiffs.  Dkts. #15-3 through #15-9.  These declarations also state only the single large number with no details about prior modeling or licensing rates.  This kind of information would be helpful for the Court.  Of course, the amount Defendant should have paid to use these images is only a starting point in calculating actual damages.

Given all of the above, the Court cannot grant the Motion as it currently stands and will set a Rule 55(b) hearing to determine the amount of damages.  The Court requests new

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND SETTING HEARING - 5

evidence of how Plaintiffs have been actually damaged.  The Court will also entertain evidence or argument as to the equity in imposing the requested damages award against this Defendant.

### IV.   CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiffs' Motion for Reconsideration, Dkt. #18, is GRANTED IN PART.  The Court directs the deputy clerk to set a Rule 55(b) hearing.

DATED this 12th day of December, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE