UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAITLIN O'CONNOR, CORA SKINNER, DENISE TRLICA A/K/A DENISE MILANI, ERICA GRISBY, JAIME EDMONDSON LONGORIA, LUCY PINDER, AND SANDRA VALENCIA,<br><br>Plaintiffs,<br><br>v.<br><br>206- LLC, d/b/a SUGARS,<br><br>Defendant. | Case No. 2:23-cv-00954-RSM<br><br>ORDER GRANTING IN PART MOTION FOR RECONSIDERATION |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs Caitlin O'Connor, Cora Skinner, Denise Trlica a/k/a Denise Milani, Erica Grisby, Jaime Edmondson Longoria, Lucy Pinder, and Sandra Valencia's Motion for Reconsideration of the Court's Order denying Plaintiffs' Motion for Default Judgment against Defendant 206- LLC ("Sugars"). Dkt. #18. The Court previously granted the Motion in part and set a hearing pursuant to Rule 55(b)(2). Dkt. #19. The hearing took place over Zoom on March 12, 2024. Dkt. #21. Having considered the arguments at the hearing, supplemental briefing from Plaintiffs, Dkt. #20, and a supplemental expert report, Dkt. #20-1, the Court will include in the default judgment a portion of Plaintiffs' requested damages in addition to injunctive relief. The Court will include fees and costs under RCW § 63.60.060.

## II.   BACKGROUND

According to the Complaint, each Plaintiff is a successful model, actress and/or businesswoman who earns her livelihood promoting her image, likeness and/or identity to clients, commercial brands, and media and entertainment outlets. Dkt. #1, ¶¶ 20-21, 28, 31, 34,

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION - 1

37, 40, 43, 46. Defendant was the owner of the strip club Sugars during the relevant time and engaged in the business of entertaining its patrons with alcohol, and nude or semi-nude entertainment in Seattle, Washington. *Id.* at ¶ 49. Defendant owned, operated and controlled Sugars' social media accounts, including Sugars' Facebook and Twitter accounts, and used such social media to post advertisements. *Id.* at ¶¶ 50-51. Many of these advertisements contained images of the Plaintiffs. *Id.* at ¶¶ 22-27, 29, 32, 35, 38, 41, 44, 47, 53. Plaintiffs each allege that such appearance was false, and occurred without their knowledge, consent, authorization, or payment. *Id.* at ¶¶ 25, 30, 33, 36, 39, 42, 45, 48, 60-74. Plaintiffs attach to their Complaint seven modelling images (one image of each Plaintiff) posted by Defendants on Twitter and/or Facebook. Dkt. #1-1. The Complaint alleges violations of 15 U.S.C. § 1125(a), the Washington Personality Rights Act (RCW § 63.60), as well as Washington's Consumer Protection Act ("CPA") and negligence.

On or about July 12, 2023, Defendant was served with the Summons and Complaint. Dkt. #8. On July 26, 2023, attorney Todd Williams of Corr Cronnin LLP reached out to Plaintiffs' counsel, Joseph Casas, to inform him that his client was aware that it had been served with the Complaint and that they were "in the process of determining whether any [insurance] coverage exists." Dkt. #11-1. On August 28, 2023, Mr. Casas forwarded the Court's order to Mr. Williams which instructed him to either file a judgment or show cause why a default would not be appropriate. *Id.* On September 15, 2023, Plaintiffs served Mr. Williams with a settlement demand. *Id.* Defendant did not answer the Complaint or respond to Plaintiffs' demand. *Id.* On October 6, 2023, Plaintiffs filed their Motion for Entry of Default, and the Clerk entered Default on October 10, 2023. Dkt. #13 and #14. On October 11, Plaintiffs moved for Default Judgment seeking $230,000 in "actual damages." Dkt. #15.

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION - 2

The Court denied that Motion on November 27, 2023. Dkt. #17. The Court, citing *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), found that most of the *Eitel* factors favored entry of default judgment. The Court declined to find merit for Plaintiffs' CPA and negligence claims. For the remaining claims, the key hangup for the Court was the fourth factor—demonstrating the amount of damages. The Court declined to award damages but said it would grant Plaintiffs' request to permanently enjoin Defendant from using any images of Plaintiffs in their advertising in a future order.

On December 11, 2023, Plaintiffs filed a Motion for Reconsideration. Dkt. #18. The Court granted in part and set a hearing. Dkt. #19. Plaintiffs submitted a brief and a supplemental report from their expert witness, Stephen Chamberlin. Dkts. #20 and #20-1. After conducting a second analysis, Mr. Chamberlin reduced the fair market valuation for two of the Plaintiffs' damages, bringing the total down to $190,000. Dkt. #20 at 11.

This sum of $190,000 is based only on the compensation each Plaintiff would have received to model for the Defendant. *See* Dkt. #15-2 at 5-6 ("The rates that models are paid are based upon numerous factors, including… the nature, duration and location of the actual shoot and production…. I employed the same approach, methodology, and process that I would typically employ when determining what to charge a company or other entity that is interested in hiring models I represent.").[1] Prior to the hearing and a review of the supplemental materials, the Court was not convinced it would be proper to award the full compensation each Plaintiff would have received to model for the Defendant as actual damages for enduring Defendant's limited piracy.

---

[1] Notably, the first expert report did "not calculate the damage or possible end of their career, damage to reputation, or loss of other clients and advertisers by the Models being associated with this type of business." Dkt. #15-2 at 5 (emphasis in original). Although Mr. Chamberlin has conducted a second analysis, the numbers are the same; the Court concludes that damage to reputation played no role in calculating damages the second time.

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION - 3

The supplemental materials certainly go a long way in educating the Court as to the nature of the modeling business and the central importance of calculating the "day rate" for a model, *i.e.* the pay for working on a photo shoot for a day. Plaintiffs' expert details how his experience and records of prior day rates obtained by Plaintiffs in negotiations with advertisers and other businesses informed his estimated day rates that would be appropriate for each of the Plaintiffs to charge Defendant.  *See* Dkt. #20-1 at 27–67.  These day rates are probably accurate.

But the day rate is only one part of the formula used by Plaintiffs' expert to reach $190,000.  This number is twice the sum of the day rates for these models.  The original Motion for Default Judgment mentioned "usages" only once—as the title for a column in a table.  *See* Dkt. #15 at 17.  Mr. Chamberlin's first expert report used this phrase without explanation, *e.g.*, "In my opinion, based on my experience and expertise in this industry, and given the number of cumulative and separate usages by Defendant (one image, two usages (Advertising, and Social Media)), I would value O'Connor's actual or compensatory damages to be, at a minimum, $20,000." Dkt. #15-2 at 7.

The supplemental expert report mentions "usages" 34 times.  The report states, in part:

> Once the Day Rate for each model has been established, the further costs to the Advertiser depends upon the "Usages." A Day Rate for each Usage is the basis of most negotiations in the model and talent industry.
>
> It must be noted that Usages as described here are categories of use not the number of times an image is posted. In fact, once a negotiation has taken place and a contract agreed to, images produced from the photo shoot can be used in the particular Usage categories an unlimited time in the agreed time period.
>
> Advertising usage is included as the use when attaching the Advertiser's name to the Model's image and is included in the Day Rate as paid for the model's time on set. This also allows the

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION - 4

>advertiser to use the images produced on their business website. In other words, an advertiser can engage the Model, produce images, attach their name and use on their website for one Day Rate total. All other Usages – in particular distribution on social media – will be negotiated additionally.

*Id*. at 19.

Plaintiffs' expert asserts that each of Defendant's posts on Twitter and Facebook constitute both an advertising *and* a social media usage—and that therefore the damages can be calculated as *twice* the sum of Plaintiffs' day rates. This is illustrated in the second expert report with annotated versions of each of the social media posts at issue. For example, there is the image found at Dkt. #20-1 at 52, which is a modeling photo of Plaintiff Longoria wearing clothing with the word "Seahawks" posted by Sugars on Facebook with the caption "Happy BlueFriday ! Sugars is open daily 10am-2:30am and is located at [address] in Seattle – at Sugars." Plaintiff's expert has annotated with red arrows pointing to the Facebook URL (labeled "Social Media") and the caption (labeled "Advertising"). On the next page of the report is the original modeling image showing Ms. Longoria wearing clothing for each NFL team from "an editorial for Playboy Magazine." Dkt. #20-1 at 53.

### III.  DISCUSSION

The Court has already found Defendant in default. Dkt. #14. After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b). This determination is discretionary. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable

neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation omitted). And "[t]he district court is not required to make detailed findings of fact." *Id.*

This Court has already found that it has subject matter and personal jurisdiction. Dkt. #17. Indeed, the Court has already addressed many of the above factors. *Id*.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). For a violation of 15 U.S.C. § 1125(a), the court has discretion to award statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If, however, the court finds that the trademark violation was willful, it may award up to $2,000,000 for each infringement. *Id.* § 1117(c)(2).

When determining the appropriate amount of statutory damages to award on default judgment in a case such as this, courts consider whether the amount bears a "plausible relationship to [the p]laintiff's actual damages." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc. v. Tilley*, No. C09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)). That is, although a plaintiff in a trademark infringement suit is entitled to damages that will compensate and serve as a deterrent, "it is not entitled to a windfall." *Id.*

15 U.S.C. § 1117 allows for recovery of Defendant's profits *or* Plaintiffs' actual damages, "subject to the principles of equity." The Court has already found that Plaintiffs need not discuss Defendant's profits. However, evidence about the scope of Defendant's business would certainly have been helpful for the Court to evaluate Plaintiffs' $190,000 damages request under the above law. Plaintiffs have not provided significant information about Defendant's financial situation. Further, Plaintiffs have struggled to address the equity of seeking $190,000 against Sugars, a number which is based solely on the day rates of the highly paid models at issue. During oral argument, the Court posed the hypothetical of a case exactly like this one, but where Sugars had posted pirated images of the highest-paid model in the world who, for sake of argument, could demand $1.5 million as a day rate. The Court asked if Plaintiffs' counsel would be seeking $1.5 million in that situation. Plaintiffs' counsel responded yes, to start—depending on the type of usages. Two usages, $3 million in damages? This answer ignores equity, as well as the relative seriousness of defendant's conduct, the plausible relationship to the plaintiff's actual damages, and the amount necessary to serve as a deterrent. To award exactly what a model would have obtained under a photo shoot contract against a strip club that posted a few pirated photos on social media ignores these factors.

Although Defendant's conduct is serious in some sense, it also appears to be amateur piracy. The photos are cut-and-pasted images from magazines; the models are not photoshopped onto the stage at Sugars. In the example from the second expert report mentioned above, Ms. Longoria's head is not even entirely visible, Defendant had to crop the image to hide the word art above her lest it be obvious the image was from Playboy or another similar source. This weighs in favor of a lower recovery.

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION - 7

The Court's prior order stated "Plaintiffs' expert apparently does the math but does not show his work." Dkt. #19 at 5.  Now that the Court can see the work, we know the high total damages number was based not just on day rates, but on doubling those rates for two "usages" of each photo.  One usage is "advertising" and another is "social media."  Demanding more money for more usages certainly makes sense in a negotiation between a model and a business starting an advertising campaign.  The Court is not convinced that this Defendant would have or could have paid for two usages.  What Defendant has done (without permission) was more limited than a full-on advertising campaign, and Defendant is being enjoined from future use. Plaintiffs have failed to convince the Court that Defendant repeatedly posting seven photos on Facebook and/or Twitter with captions advertising Sugars strip club is equivalent to breaching a $190,000 contract, or that thinking about "usages" in this way is particularly helpful.

On the other hand, evidence of the actual ways Plaintiffs were damaged, *e.g.* damage to their reputation or modeling careers, would be helpful.  Although Plaintiffs and the expert hint at this evidence in declarations, it is not reflected in the $190,000 request.

The Court understands that such evidence may be costly to obtain, or impossible to quantify.  The day rate charged by the Plaintiffs is at least *something* for the Court to work with. Taking all of the above into consideration, the Court will trim its award to the sum of the day rates suggested by Plaintiffs' expert for one usage instead of two, effectively cutting the requested damages in half, as this more closely reflects the conduct at issue.  Anything above this amount runs afoul of the other factors discussed above.

### IV.   CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby FINDS and ORDERS:

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION - 8

1. Plaintiffs' Motion for Reconsideration, Dkt. #18, is GRANTED IN PART.

2. Defendant is permanently enjoined from using any images from Plaintiffs in their advertising, including without limitation those images annexed to the Complaint.

3. Plaintiffs, jointly and severally, shall have judgment against Defendant, for the sum of $95,000 in damages for the conduct alleged in this case.

4. Plaintiffs are granted leave to file a motion for attorney's fees and costs under RCW § 63.60.060.  Such motion shall be filed no later than fourteen (14) days after the date of this Order and shall be supported by a declaration setting forth the bases for a reasonable rate and reasonable hours spent in this action.  A judgment including this sum will issue at a later date.

DATED this 14th day of March, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION - 9